The Honorable Judges of the United States Court of Appeals in the 4th and 7th Judicial Surveys. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and its Honorable Court. Good morning, everybody. We're here today for oral argument. We're going to begin with case number 1, 21-2850, Kelley v. Stevanovich, and we'll begin with May it please the Court, my name is Sarah Riedel-Clark, I represent the appellant, Mr. Stevanovich. The trustee seeks to use supplementary proceedings as both a sword and shield. On the one hand, he contends that Mr. Stevanovich failed to fully litigate his claims in the truncated proceedings below, while on the other hand, simultaneously arguing that those The district court summarily accepted the trustee's allegations without holding a hearing or trial. In so ruling, the district court made five procedural errors. First, by granting the trustee greater rights than capital strategies would have had as the judgment debtor against Mr. Stevanovich. Second, by allowing the trustee to revive stale claims that capital strategies could not pursue. Third, by issuing a dispositive ruling without an evidentiary hearing or trial. Fourth, by prematurely shifting the burden of proof to Mr. Stevanovich. And finally, by misapprehending the proof necessary to meet the prima facie claim. Therefore, Mr. Stevanovich respectfully requests this court to reverse those compounding errors. In the course of the briefing, the trustee makes a critical concession by omission that almost goes unnoticed. He quietly concedes that he stands in the shoes of the judgment debtor, capital strategies. That concession eviscerates his claim under section 1402C3. That section permits a court to compel a third party to deliver assets, quote, when those assets are held under such circumstances that the judgment debtor could recover them. When the trustee commenced this supplementary proceeding against Mr. Stevanovich in January of 2019, capital strategies had no ability to pursue Mr. Stevanovich for the wine and spirits purchased between 2006 and 2008. Any such action expired five and a half years before the trustee filed the supplemental proceeding and before the trustee obtained the default judgment against capital strategies which he seeks to enforce. The trustee's concession that he stands in the shoes of capital strategies also eviscerates his claim under section 1402C6. That section permits the court to, quote, authorize a judgment creditor to maintain an action for recovery of the debt. While the trustee alleges that Mr. Stevanovich is indebted to capital strategies, capital strategies transferred all interest in those assets prior to 2011 when it dissolved. It transferred those assets to third parties against whom the trustee does not have a judgment. Moreover, section 1402C6 authorizes the district court to allow the trustee to maintain an action, not to summarily rule and order a third party to satisfy the judgment entered against a different entity. Moreover, under the appellate court decision in Doar Properties, which is at 2020 Illinois Act 1st 173163, quote, in a citation proceeding, a judgment creditor may not recover from a third party respondent unless the judgment debtor could have recovered from the third party respondent. Moreover, both sections C3 and C6 require that, quote, assets or income of the judgment debtor are discovered. But the trustee did not discover that Mr. Stevanovich held assets of capital strategies. The trustee purportedly discovered that capital strategies had stale claims. Again, pointing the court's attention to the Doar Properties decision, if the third party does not owe a legally enforceable debt to the judgment debtor, then the judgment debtor has no right to recover anything from the third party. And thus, neither would the judgment creditor stepping into the judgment debtor's shoes. How, Ms. Greta, would you distinguish the Dexia case? Yes, Your Honor. So if you look at the whole panoply of the Dexia cases, there's a March 2009 decision in which the district court found that the claimant established both the statute of limitations applicable to enforcement of judgments, but also the four-year statute of limitations applicable to the theory upon which turnover was sought, in that case, fraudulent transfer. In this court's opinion on appeal in Dexia, the parties were discussing a different statute of limitations. They were discussing the statute of limitations for constructive trust, which was not the upon which the claimant sought turnover. That was the theory, the equitable theory, by which the claimant sought to establish that the assets held in the respondent's trust were actually the assets of Peter Rogin. So in that case, the claimant actually did satisfy both statutes of limitation. But nowhere did the court indicate that the underlining basis for the turnover had any bearing on the statute of limitations in Dexia. In the district court, they didn't. In this court's opinion. In this court's opinion, correct, Your Honor. But they were only evaluating the respondent's argument that the statute of limitations for constructive trust was the statute of limitations that governed the claim. I'm not arguing that a statute of limitation is applicable to a theory upon which the trustee seeks to establish Mr. Stavanovich held assets is applicable. I'm asserting that the theory upon which he seeks turnover is the appropriate statute of limitations to look at for his claims. The underlying embezzlement at tort? Yes, Your Honor. That's correct. Can I shift you to that just in the interest of time? Of course. You can tell me I'm mistaken on this. But the one thing that seemed important on the merits of it to the district court was on the affidavit that was filed and the affidavit 16 months after the testimony in which Mr. Stavanovich claimed to have no knowledge of the underlying transaction. I noticed I didn't see any argument on your part, either in the blue brief or the reply brief on that front. What's the explanation for the affidavit? Your Honor, I submit to this court that we weren't given an opportunity to fully litigate the issues with respect to the affidavit because we weren't given a hearing or functionally any process by which we could vet that other than the party's written submissions. The response that I have for you on that. Meaning, what does that mean? Does that mean that you weren't, Judge Tharp did not afford you an opportunity to make a record on that or to offer an explanation? Correct, Your Honor. Okay. Why couldn't you do it in the briefing? Your Honor, if you look at the briefing, the expectation that Mr. Stavanovich had was that the court would follow cases like Harmon and Workforce that require an evidentiary hearing when there is a contested issue about whether— How could you argue that, though, because he never asked for an evidentiary hearing and he specifically said in his briefing that no factual dispute exists. And when you tell a court that there's no factual dispute, you have no basis for a hearing. And I don't need to sidetrack you from Judge Scudder's question, so you could go back to that. But I don't see how you can say that based on this record, that he was somehow deprived of something that he never asked for and never gave a basis for when you concede there's no factual dispute. So, Your Honor, two responses to that point. First, the statute doesn't require that a litigant request a hearing in order to receive one. In the Door Properties case, neither party asked for a hearing and the appellate court remanded for an evidentiary hearing. Because it's within the district court's discretion whether or not one is needed. If you think one is needed, litigants ask for it, especially given the local rule that said you may or may not get a hearing. Correct. My second point on that would be that under the Harmon case and under the Workforce case, just a hearing is required in the circumstances presented in the district court below. The parties very vehemently contested the facts related to this claim and whether Mr. Stavanovich ever held any assets of the judgment creditor. Can I ask, just in following up with the dialogue we're having here, suppose that the district court wrote the opinion, wrote his opinion in order a little bit differently. And suppose when he was speaking to your client's credibility, he invoked the sham affidavit doctrine. And he said, the affidavit, in my view, is a sham. It's false and fraudulent. There been any error? The testimony in the bankruptcy court, the way the timeline seems to work out, was 16 months before the affidavit or declaration was filed in front of the district court. So I'm at a loss to understand, what is the possible explanation for the detailed recollection of the transaction in the district court and the complete professed memory failure in the sworn testimony in the bankruptcy court? Is there any possible explanation for that? So if you look at the deposition testimony, Your Honor, the trustee asked a specific question. I know what you're going to say, but keep going. I don't find that remotely persuasive. If you don't find that remotely persuasive, I have a second point, Your Honor. The district court appears to have wholesale rejected the affidavit. There are issues. I think, in substance, as a sham affidavit. Even without citing that rule? Yeah, so the sham affidavit doctrine, by its terms, doesn't apply because it's not the same proceeding. But in substance, to my eye, you can talk me out of it, but to my eye, the district court invoked the very principles that give rise to that doctrine that animate it. The trustee never asked Mr. Stavanovich at his deposition whether there were any other documents that could possibly refresh his recollection. The only documents that Mr. Stavanovich was showed were the bank records pertaining to the purchases at issue. The documents upon which Mr. Stavanovich submitted the affidavit in opposition to the turnover rely on different documents that were identified after the course of the deposition. So, in that way, I would submit that to the extent that... The document that was referred to in the briefing is one transfer from a bank account to his that doesn't provide detailed backup for his affidavit. It might be different if you came in here and said, okay, I purchased this wine for a third-party investor, and here's our agreement. Here's an affidavit from the third-party investor who happens to be my brother. Here are the bank accounts that show the money going back and forth. Here's the agreement with Christie's. There's none of that. There's one transfer that's very vague and doesn't... Could support numerous different positions. So, I'm not persuaded by the argument that all of these new documents he looked at suddenly refreshed his recollection when the only document that was provided was this transfer document. Your Honor, that dovetails into my argument about why it was error for the district court to allow the trustee to revive stale claims. We're dealing with purchases that occurred between 2006 and 2008. Let's assume those claims aren't stale. How do you get around that? I'm just merely pointing out the skepticism that this court has about the failure to provide documents. We're dealing with transactions... Take the deposition testimony. I think your arguments could have traction if the substance of the deposition testimony was, we bought wine all the time. I don't remember this particular transaction. There were dozens of them. There's all kinds of corporate records. There's board authorizations. All of the corporate formalities were attended to. But if you're asking me about this particular transaction, I can't remember it. If you give me an opportunity to bring forth some documents to send them to you, but that's not the testimony. The testimony in the bankruptcy court was, the name of this outfit sounds like a wine company. That's correct, your Honor. But he did testify that he did not recall those purchases. He's a wine connoisseur. He has a custom and practice, quite admirable it seems, of handing out wine as gifts to friends, business associates, what have you. But to say it sounds like a wine company, and then to come in with a detailed affidavit explaining the transaction, that's the way I read the district court opinion. I know it's a multi-layered appeal, but on this particular issue, it sure seems like Judge Tharp, without formally invoking the doctrine, said it's a sham affidavit. Again, if that is the case, and the district court's opinion does not say that. In fact, it says that he would use his evaluation of the affidavit to accord it the way it deserved. That's an improper summary ruling. This wasn't a motion for summary judgment. The court was weighing the credibility of witnesses that were never put before it. But you don't need a witness to testify live to evaluate credibility on facts like this. I think that's Judge Scudder's point. The concept behind... I'm sorry. It's awfully difficult when there's not a request made for the hearing. And again, Your Honor, I would submit that there wasn't a requirement. There's not a requirement in the statute, and there's not a requirement in the case law. But the app... See, it goes hand in glove. The impression that you're... With the tact that your client chose, the impression that he left is, of course I don't want to testify. You really want me to have to answer those questions about the affidavit and the bankruptcy testimony? I don't want to testify. Your Honor, may I briefly respond? Of course, of course. The trustee tries to make the argument that because Mr. Stavanovich asked to be excused for medical reasons from the 277E in-court citation hearing, that he somehow waived his right to a hearing in the later filed motion for turnover. Actually, that doesn't make sense because he couldn't have by that prior... No, the bigger point is this. The bigger point is he could have, could he not, have gone to Judge Tharp and said, I am eager to testify. I'm eager to explain to you why I now remember this transaction, why this transaction was all above board, et cetera, et cetera. He had every opportunity to do that. He filed papers in the district court. Yes, Your Honor, Mr. Stavanovich could have done that, but under Harmon and Workforce, my contention is that the district court was required to. We're going to give you a brief time for rebuttal. Your time has expired. Thank you. We'll now hear from the appellee, Mr. Margulien. Good morning, Your Honors. May it please the court. My name is Igor Margulien, and I'm appearing here today on behalf of the Plains Appellee, Douglas A. Kelly, the trustee for the P.C. Allegheny Trust. Your Honors, so I think I probably would like to start with addressing the overarching theme that was presented by appellant's counsel about how our claims are eviscerated by the fact that under the statute, because this is a post-judgment proceeding and we're a judgment creditor, that we can only do things that a judgment debtor can do, and that we effectively stand in the shoes of the judgment debtor. That is what the statute says, but insofar as it applies to the statute of limitations argument, as I think the panel pointed out previously, in Dexia, this court has held that in a post-judgment proceeding such as this one, the relevant statute of limitations is the one that governs enforcement of judgments. And on that basis, the court in Dexia specifically affirmed the district court's application of the seven-year statute of limitations for enforcing judgments, which of course begins to run only once a judgment is issued. And so I understand that appellant argues here that Dexia doesn't apply because the trustee is proceeding on the claim that appellant had embezzled from the judgment debtor while in Dexia, the creditor argued that the assets were held by third-party trusts, belonged to the judgment debtor. We don't think that distinction matters. We think it's a technical and ultimately meaningless distinction. And it certainly doesn't give this court any reason to depart from the ruling in Dexia that judgment enforcement proceeding like this one should be governed by the statute of limitations that applies to enforcement of judgments. And so for that reason- I want to join a couple portions of the multi-layered appeal. Sure. Is it counterintuitive here to decline the embezzlement statute of limitations, but then adopt the standard of proof for embezzlement? I don't think so, Your Honor, because I think at the end of the day, this court's holding in Dexia treats the statute of limitation question as one that's governed by looking at the overarching nature of the proceeding, which is a post-judgment proceeding in this case. And so we do think that the only question that's relevant to this issue is to ask, well, why was this proceeding initiated? And of course, the answer is the proceeding was initiated to enforce and satisfy a previously obtained money judgment. Now, it is true that Illinois post-judgment enforcement law allows judgment creditors to recover assets through a variety of means, one of which happens to be a proceeding that allows you to recover assets based on this theory of embezzlement. But I think the important point here is that what we're doing is still fall squarely within the language of Illinois Section 2-1402 of the Illinois Procedural Code that spells out what steps judgment creditors can take to recover assets. And what the law says is one of the steps that we can take is we can assert a claim against a third party that had misappropriated assets from the judgment debtor and on the basis of that claim, requested the court order a turnover, which is what the court did in this case. That said, of course, a court still has to apply some standard and some basis in determining whether in fact there is a basis to order a third party to surrender assets. And the law says that the theory that could be employed for that purpose is a theory of embezzlement. And in that instance, we do think it's logical then to say, okay, well, then we'll need to look at what standard of proof governs the underlying embezzlement claim. So you are asking us to silo those two analyses, engage in those analyses, and although they happen to be about a similar tort slash crime, that similarity we are to ignore. I think, Your Honor, I mean, that's one way of looking at it, but I do think there are separate questions. And frankly, you know, the law we think is pretty clear on the statute of limitations question. The only question we have to ask here, is this a judgment enforcement proceeding or not? The answer is it is. So the judgment enforcement statute applies. And we recognize that there actually isn't a precedent that's directly on point in terms of which standard of proof governs in supplementary proceeding where you're pursuing a theory of embezzlement. The court in its decision, as the panel might've seen, noted that it couldn't locate a case like that. And frankly, since the court issued that opinion, we haven't identified one either. And so at the end of the day, we do think it's entirely consistent to apply a statute of limitations here that applies to enforcement of judgments. But at the same time, apply, look to Illinois state law in terms of figuring out what standard of proof governs the underlying claim. Do you think on this fact pattern, the preponderance vis-a-vis the clear and convincing standard makes any difference at all? We do not. And I think the main reason we do not is because as far as we're concerned, the trustee is the only party that put in competent objective evidence in support of his embezzlement claim here. In response, Mr. Stavanovich functionally, all he did is put in a bare declaration, denied that this was embezzlement that wasn't supported by any objective evidence. And of course, as the court found, and as I recognize the panel is aware, that declaration was further, its evidential value was essentially nullified by the fact that it was inconsistent with Mr. Stavanovich's prior deposition testimony. So we would actually probably also argue that even if the clear convincing standard applied, we would still prevail. But we do think the court was correct in determining that the relevant standard here is the preponderance of the evidence standard. Of course, the rule is that the law of the forum that governs the claim is the law that supplies the rule of decision on what standard governs. And so in this case, the court correctly looked to Illinois state law to determine what standard governs. As I mentioned, there didn't appear to be any cases specifically addressing embezzlement. So we think the court properly looked to the most analogous case that it could find dealing with the conversion claim. We do think that conversion is actually a particularly appropriate analogy here because section C-3 of the main section 2-1402 of the Illinois procedural code pursuant to which we're proceeding here actually expressed to this conversion alongside embezzlement as an alternative ground. How does the reliance on Grogan impact that? Are you saying the court shouldn't have relied on Grogan, the Supreme Court case for it? Should have just looked to the conversion? Yes, Your Honor. So the issue with Grogan raises a separate point. And that's, of course, the basis on which Mr. Stavanovich is alleging that the clear and convincing standard should apply. Our position is that Mr. Stavanovich hasn't presented any law that has any relevance to this case and really sort of provides any guidance as to what standard should apply in this particular post-judgment proceeding that we're proceeding in the theory of embezzlement. And I think as the panel might've noted from the, might've seen it from the district court opinion, Mr. Stavanovich actually originally argued that the clear and convincing standard is applicable here by relying on criminal cases. And the court rejected that argument and said that the criminal cases are completely irrelevant here. And only after that, Mr. Stavanovich apparently pivoted and identified these federal bankruptcy cases, which he now claims provide the relevant standard. But as you can see, the cases in which he relies on, they don't deal with post-judgment turnover under Illinois law. There's also not a lot of reasoning in the decisions. Correct, Your Honor. And at the end of the day, these cases deal with turnover orders or turnover motions that are brought pursuant to section 542 of the bankruptcy code. It's a very specific procedure that exists only in bankruptcy and that allows bankruptcy trustees to marshal assets for the benefit of the bankruptcy state. But that is not what we're doing here. This is a post-judgment proceeding. We're a post-judgment creditor. So our position is that those cases have zero application here. Mr. Margolin, can I get the benefit of, can you just step back from this fact pattern, forget the facts entirely, and walk us through the legal framework that you think controls a district court's determination in a circumstance like this as to whether to hold a hearing, an evidentiary hearing. And the reason I'm asking that is I'm wondering, is there a role, is that all governed by state procedural law? Is there some role for federal procedural law to play? How would you articulate the framework? And then you can talk about how you think it fits the facts. Certainly, Your Honor. So I think the main point here is that in these circumstances, when we're talking about a federal district court overseeing a post-judgment proceeding, the law actually says that the court has a lot of discretion in how to proceed. And that rule was specifically articulated by this court in the Resolution Trust Corporation versus Ruggiero case at 994F 2nd 1221, where this court held that district courts have substantial flexibility in how they conduct post-judgment proceedings. And in that case, it specifically noted two things. One, that Illinois law appears to leave the procedure to be followed in such proceedings largely to the judge's discretion. And two, that federal rule of Procedure 69, which of course also applies here because it's the federal rule that governs post-judgment enforcement proceedings. The court in Ruggiero said that rule should not be read to put district courts into, quote, a procedural straitjacket, whether of state or federal origin, close quote. When overseeing post-judgment procedures. So ultimately what this court held in Ruggiero Honors is that district courts may resolve post-judgment proceedings in any manner they see fit so long as due process is satisfied. Did we pull back on that at all in Starr Insurance Company? Which was a 2009 case after Ruggiero where we re-mentioned that Rule 69 conforms collection proceedings to state law. Your Honor, I'll admit I haven't studied the Starr decision specifically for that proposition, but based on what you just mentioned, it sounds to me like the court in that case might have said that we need to look to Illinois state procedure a little closer. But even if that's the case, as I just mentioned, this court has recognized that Illinois procedure appears to leave a lot of discretion to how a district court can proceed with respect to post-judgment proceedings. And so I think if we focus on Illinois law, our position is as follows. First, contrary to what the appellant argues, Rule 277 of the Illinois Supreme Court rules does not impose a categorical requirement for a hearing. When you look at the language of the rule, no part of it we think fairly can be read to mandate a district court to hold a hearing in any circumstance. And Frank, I don't think Mr. Stonish ever responded to the argument about how the law, the rule itself is silent as to that issue. What he does rely on is a set of decisions that have interpreted that rule to require district courts to hold a hearing, or I should say lower courts. But even then, when you look at that line of cases, they don't say that a hearing must be held in any circumstance. They specify a narrow set of circumstances, right? And I think the key circumstance that they specify, and this was particularly articulated in the workforce solutions decision on which Mr. Stavanovich relies, they said that rule 277 requires an evidentiary hearing only in a very specific circumstance where both the judgment creditor and the third-party citation respondent claim entitlement to the same assets. And what the court specifically said in that case is that in order for a factual dispute to arise, the third-party citation respondent also must make a claim on the asset at some point in the proceeding. Resolving that dispute raises a question of fact requiring an evidentiary hearing. So we don't have that here. Mr. Stavanovich isn't claiming entitlement to the same assets we're trying to recover. In fact, he's arguing the opposite. He's claiming he never had these assets, that he was never in possession of them. The other- Is that a distinction with a difference, though? I'm sorry? That seems awfully technical. In other words, I'm glad you're raising workforce solutions because I think Ms. Riedel makes a fair point about it. That seems to lean pretty far forward with respect to the need for an evidentiary hearing. Well- That's why I'm trying to figure out, it just seems a little bit odd to me that in a federal district court proceeding like this, I don't really have any discretion on whether to hold a hearing. I just need to exercise that discretion conferred by Illinois law. Maybe. Is that what Rule 69 requires? Well, I think, Your Honor, again, our position is that, ultimately, a district court has a lot of flexibility in how it elects to conduct post-judgment proceedings. And a lot of discretion. You think there's flexibility within the four corners of what the Illinois Appellate Court outlined in Workforce Solutions? Well, I think it's also important to point out that there's actually not a unanimous agreement among Illinois state courts on whether a hearing is required in every case. And, for instance, we cited the Excel supply case in our papers, Your Honors, where the court expressly held that a contested turnover motion can be resolved without a hearing. And it actually went so far as to say that that was also holding that, I guess at least implicitly, was endorsed by the Illinois Supreme Court in downing Chicago View Options Associates. So the court actually said that, in that case, the majority affirmed a lower court's grant of a turnover order without a hearing, even though no hearing was conducted. And it didn't specify that a hearing needed to be held. So I think in the absence of Rule 277 having a clear requirement for a hearing, and in the absence of any agreement among the Illinois Appellate Courts as to when a hearing is required, we don't think there's any requirement that exists for a hearing that certainly applies here. And as Your Honors also pointed out, the cases that Mr. Stavanovich realized are distinguishable for the separate important reason, which is that in each of those cases, a party actually requested a hearing. Mr. Stavanovich never requested a hearing in this case. And so we think that's what makes those cases inapplicable. Your Honors, I see that my time is almost up, so I'm happy to answer any more questions or otherwise conclude. Oh, thank you very much, Mr. Margulian. Okay, thank you, Your Honors. So for the reasons that I've stated, we ask that the turnover order be affirmed. Thank you. Thank you. Ms. Riedel, we'll give you two minutes for rebuttal. Thank you. May it please the Court. My opponent cites to the Excel case. That case does not apply in this case because that was evaluating whether a hearing was required under circumstances in which a violation of 1402F was committed. That is related to whether a citation respondent violated a restraining order in the citation request for assets. In this case, that's not an issue. That's not something the parties ever litigated or argued. The issue here is whether a hearing was required under 1402C and the dispute related to that. Under Harmon and Workforce, a dispute related to 1402C, which is all we're here today to talk about, does require an evidentiary hearing. And the Workforce case is fairly, as Your Honor noted, forward-leaning on that. The application of the limitations I'm requesting of this Court to the trustee's claim are fair. The trustee is trying to enforce a default judgment where he did not litigate the merits of the underlying claim. That underlying claim remains pending as to all other parties, including Mr. Stavanovich. Therefore, the supposed cheap, swift, and informal proceedings conflict with due process in this case. The trustee didn't allege that Mr. Stavanovich converted assets. He alleges he committed a fraud. He alleges he embezzled. The consequence of the seriousness of those allegations is that trustee must be held to the appropriate procedures and the appropriate standard of proof. Thank you, Your Honors. Thank you, Ms. Riedel. Thank you, Mr. Margulian. The case will be taken under advisement.